UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

IN THE MATTER OF
INFORMATION HELD BY T-
MOBILE RELATED TO CELLULAR
DEVICE NUMBER (347) 498-5837

Case No. 22-SW-019-LDA

**AFFIDAVIT IN SUPPORT OF APPLCATIONS FOR SEARCH WARRANT**

I, Elden DaSilva, a Deputy United States Marshal with the United States Marshal Service ("USMS") being duly sworn, hereby depose and state as follows:

**BACKGROUND OF AFFIANT**

1. I am a Deputy United States Marshal and have been employed by the United States Marshals Service (USMS) since 2010. I have received extensive training in criminal investigations and threat investigations. I graduated from the Criminal Investigators Training Academy and United States Marshals Service Basic Training Class. Both are located at the Federal Law Enforcement Training Center in Glynco, Georgia. I have received additional training in various areas of law enforcement, including the apprehension of fugitives and threat investigations. Prior to serving as a Deputy United States Marshal, I was employed as a Virginia State Trooper with the Virginia State Police for approximately five years. My current primary assignment is the apprehension of violent federal and state fugitives and the investigation of threats against United States Federal Judges and other protected federal employees. I am assigned to the Rhode Island Violent Fugitive Task Force and the FBI Safe Streets Gang Task Force. I have participated in hundreds of Fugitive investigations.

2. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent authorized to enforce criminal laws and duly authorized by the Attorney General to request a search warrant. I am one of the officers involved in the investigation that is the subject of this affidavit and have personally participated in the investigation concerning the violations of the federal laws listed herein.

3. I submit this affidavit in support of an application for a search warrant pursuant to Federal Rules of Criminal Procedure 41 and Title 18, United States Code, Section 2703(c)(1)(A), for precise location information (E-911 Phase II data) about the location of Target Cell as well as 18 U.S.C. § 3123(b)(1) for phone (347) 498-5837, a cellular device serviced by T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054. Target Cell Phone is further described in Attachment A, and the location information to be seized is further described in Attachment B.

4. As set forth herein, JASON HATCHER is currently a fugitive from justice in that he is the subject of a federal arrest warrant issued on July 9, 2021 by the United States District Court for the District of Rhode Island (2021-CR-71-WES). This warrant issued after the return of an indictment by a duly constituted grand jury that charged HATCHER with Conspiracy to commit wire fraud (18 U.S.C. § 1349) and Aggravated Identity Theft, 18 U.S.C. § 1028A. Since that date, HATCHER has been the focus of fugitive investigations conducted by the USMS and the US Department of Homeland Security Investigations (HSI). The warrant sought will provide information to the USMS

that will assist the USMS in locating an arresting HATCHER who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

5.     I base this affidavit on: (a) my personal knowledge and involvement in this investigation; (b) my review of telephone and other records related to HATCHER; (c) information provided to me by Special Agents of Homeland Security Investigations, (d) reports of other DUSM and (e) my experience and training as a criminal investigator. Since this affidavit is being submitted for the limited purpose of establishing probable cause for the issuance of a search warrant, I have not included every fact known regarding the instant investigation. This affidavit includes only those facts that I believe are necessary to support the application for the requested order and warrant described above and does not include all the facts uncovered during the investigation.

## **PROBABLE CAUSE**

6.     On June 10, 2021, HSI Special Agent Donaghy was contacted by East Providence Police Department (EPPD) Detective Corporal Michael Spremulli regarding an elder fraud complaint involving an 89- and 93-year-old married couple that occurred on June 9, 2021. According to Detective Corporal Spremulli, on June 9, 2021 at 4:34 pm, the East Providence Police responded to 27 Carousel Drive for a report of a fraud. On arrival police met with Sheila and Manfred Steiner who reported that they had been tricked into withdrawing $16,000 in cash from their Citizens Bank account and providing the cash to an unknown Hispanic male wearing black pants and a black shirt with a red stripe. According to Sheila Steiner, she received a telephone call from a man identifying

himself as an attorney in Utah. The caller claimed that the Steiner's' granddaughter had been involved in a motor vehicle collision and as a result had been arrested for reckless driving and required $16,000 cash bail. Sheila Steiner reported that she was concerned for her granddaughter and traveled to Citizens Bank in Barrington to withdraw $16,000 cash. A short while later the above-described Hispanic male arrived and took possession of the money.

7. According to Mrs. Steiner, after paying the $16,000 she received a second call from the attorney, "Mr. Clayton," who claimed that the woman her granddaughter had collided with had been pregnant and suffered a miscarriage that resulted from the crash. The "lawyer" claimed the victim's granddaughter was now being charged with reckless endangerment and now required an additional $14,000 cash. Mrs. Steiner became suspicious and believed she had been scammed. At that point she called her granddaughter who does live in Utah and confirmed there had been no collision. Based upon Agent Donaghy's conversation with Cpl. Spremulli and her review of the East Providence Police report, she recognized the Steiner's were victims of an all-too-common scam targeting the elderly. Agent Donaghy is aware that the culprits carrying out these scams are highly organized and stay in close communication. She is also aware that these fraudsters are heavily dependent upon cellular telephone communication and use interstate wire transmissions to execute their schemes. Accordingly, Agent Donaghy opened a federal investigation into possible wire fraud and conspiracy to commit wire fraud violations.

8. After receiving the referral from the East Providence Police, Agent Donaghy learned of twelve other elder fraud complaints that were reported to police departments located in Hopkinton, Coventry, Cranston (3), Cumberland, North Kingstown, Smithfield, Warwick (2), Barrington and Johnston, Rhode Island all occurring between June 8, 2021 to June 11, 2021. All the elder fraud complaints involved the same request for cash to release the victim's relative from jail.

9. As a result of that investigation, the grand jury returned an indictment charging HATCHER and others with Conspiracy to Commit Wire Fraud (18 U.S.C. § 1349) and Aggravated Identity Theft, 18 U.S.C. § 1028A. The United States District Court issued an arrest warrant. Initially, HSI launched a fugitive investigation, the focus of which was the apprehension of HATCHER. After meeting with negative results, HSI requested the assistance of the USMS. USMS Providence opened a fugitive matter. USMS deputies and task force officers have undertaken a variety of methods to locate and apprehend HATCHER including interviewing family members and visiting New York locations investigators thought he may be staying.

10. The Warwick Police arrested HATCHER on June 11, 2021 for violations of state law. HATCHER was initially detained for want of bail. At the time of his arrest, HATCHER was in the company of Destiny D. Quinones, age 24 of New York City, New York (Bronx). At that time, HATCHER described the woman he was with as being like his "step- daughter, in that he had been in a long-time relationship with her mother, Nyreen Quinones. Members of the investigative team researched HATCHER's state court case file and determined that Nyreen Quinones had posted HATCHER's bail with

the Rhode Island Department of Corrections thereby securing his release. Department of Corrections records document that HATCHER had listed Nyreen Quinones as his emergency contact.

11. On January 11, 2022, the USMS developed information that HATCHER was enrolled in the Supplemental Nutrition Assistance Program (SNAP) with the State of New York. A review of the records related to HATCHER's SNAP benefits revealed that he or someone on his behalf provided two contact telephone numbers, (347) 498-5837 (Target Phone) and (914) 387-7298. Subscriber information was obtained for both phones. Each phone is serviced by T-Mobile and is subscribed to Nyreen Quinones.

12. On January 3, 2021, at 6:51 am, HATCHERS SNAP account was accessed by phone number (347) 498-5837. On the same day at 11:33, HATCHER's SNAP account was used to make a purchase at Lucky 2 Gourmet Deli located in the Bronx, New York.

13. Based upon records analysis of phone number (347) 498-5837, records of known associates and records provided by HATCHERS SNAP account  I have concluded that HATCHER is currently using (347) 498-5837. I know that T-Mobile Corporation (the "Company") is a company that provides cellular telephone service to the public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking

technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone is connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

14. Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data and/or other location data about the location of Target Telephone. Based on my training and experience, I know that the Company can collect cell-site data about the Target Telephone such information will allow me to locate HATCHER and execute this Court's arrest warrant.

## AUTHORIZATION REQUEST

15. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c) and further treat the warrant as an application for a pen register and trap and trace device in accordance with 18 U.S.C. § 3123(b)(1).

16. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of

the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

17. I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile's services.

18. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

19. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Phone outside of daytime hours.

20. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

_____
Elden DaSilva
Deputy United States Marshal

| | |
|---|---|
| Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone. | |
| _____<br>*Date* | _____<br>*Judge's signature* |
| _____<br>*City and State* | Lincoln D. Almond, US Magistrate Judge<br>*Printed name and title* |

## **ATTACHMENT A**

Information about the location of the mobile phone assigned (347) 498-5837 with listed subscriber(s) unknown (the "Target Phone"), whose service provider is T-Mobile, a wireless telephone service provider headquartered at T-Mobile, 4 Sylvan Way, Parsippany, New Jersey 07054.

## ATTACHMENT B

## Particular Things to be Seized

**I.  Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of T-Mobile, including any information that has been deleted but is still available to T-Mobile or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), T-Mobile is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period December 13, 2021, to January 19, 2022:

a. The following information about the customers or subscribers of the Account:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity

       Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

  vii. all call, text and data connection location information related to specialized carrier records that may be referred to as Truecall or TDOA (Time Distance of Arrival or Timing Advance Information) - T-Mobile & Metro by T-Mobile, Mediation Records E9-1-1, and/or Historical GPS/Mobile Locate Information which shows GPS location (longitude and latitude) and Cell Site and sector of the device in relationship to the network when connected to the network for the above referenced number.

  viii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

  ix. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

  i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

  ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received

    A. All information about the location of the Target Phone described in Attachment A for a period of thirty days beginning on January 19, 2022 , during all times of day and night.  "Information about the location of the Target Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile, T-Mobile is required to disclose the Location Information to the government.  In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services,

This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

  II.    **Information to Be Seized by the Government**

All information described above in Section I that will assist in locating and arresting JASON HATCHER, a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.